# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | |
|---|---|
| **TOBY SHAUN BORDELON** | **CIVIL ACTION NO. 08-1931** |
| **La. DOC # 486799** | |
| **VS.** | **SECTION P** |
| | **JUDGE DOHERTY** |
| **TERRY TERRELL, WARDEN,** | |
| **ALLEN CORRECTIONS CENTER** | **MAGISTRATE JUDGE HANNA** |

## REPORT AND RECOMMENDATION

*Pro se* petitioner Toby Shaun Bordelon  filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2254 on December 9, 2008. Petitioner is an inmate in the custody of Louisiana's Department of Corrections; he is incarcerated at the Allen Corrections Center, Kinder, Louisiana. He attacks his 2005 conviction for attempted forcible rape in Thirteenth Judicial District Court, Evangeline Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.  For the following reasons it is recommended that the petition and amended petition be **DISMISSED WITH PREJUDICE.**

### Background

Petitioner was indicted by the Evangeline Parish Grand Jury and charged with forcible rape. [SCR, Vol. 1, p. 28] On June 15, 2005, he was found guilty of the responsive verdict of attempted forcible rape. [SCR, Vol. 1, pp. 34-40] On September 15, 2005 he was sentenced to serve 20 years at hard labor. [rec. doc. 1-4, pp. 1-7; SCR Vol. 1, pp. 42-45]

He appealed arguing insufficiency of the evidence, error in admitting hearsay evidence, and excessive sentence. [rec. doc. 1-4, pp. 8-26; SCR, Vol. 1, pp. 120-138]  On April 19, 2006 his

conviction and sentence were affirmed by the Third Circuit Court of Appeals. *State of Louisiana v. Toby Shaun Bordelon*, 2005-1507 (La. App. 3 Cir. 4/19/2006), 929 So.2d 244. [See also rec. doc. 1-4, pp. 27-41; SCR, Vol. 1, pp. 3-27]

His application for writs was denied by the Louisiana Supreme Court on December 15, 2006. *State of Louisiana v. Toby Shaun Bordelon*, 2006-1549 (La. 12/15/2006), 944 So.2d 1284. [see also rec. doc. 1-4, p. 42; SCR, Vol.1, p. 192] Petitioner did not seek *certiorari* in the United States Supreme Court. [rec. doc. 1, ¶9(h)].

On March 22, 2007 he filed a *pro se* application for post-conviction relief in the Thirteenth Judicial District Court.  He argued three claims of ineffective assistance of counsel–

(1) Defendant was deprived of his constitutional right to a fair trial due to the ineffectiveness of his trial counsel for interfering with and violating his right to testify;

(2) Counsel failed to investigate the facts, meaningfully prepare a defense, or make timely objections at trail thus undermining the adversarial process;

(3) Counsel was ineffective during the jury selection process for allowing a biased jury to be empaneled. [rec. doc. 1-4, pp. 43-79; SCR, Vol. 2, pp. 194-235]

On August 9, 2007 an evidentiary hearing was convened; petitioner and his court-appointed trial attorney testified.  At the conclusion of the hearing, the trial court denied relief, noting,

> It is obvious to me that Mr. Bordelon did at different times want to testify to relate his side of the story but after calm, cool, collective conversation he got good advice from his attorney. It's not that Mr. Chapman told him he could not testify, he was telling him he should not testify. There is a significant difference there. I don't find that Mr. Bordelon's argument holds water, I'm denying the post conviction relief that he prayed for. [rec. doc. 1-4, pp. 1-35, at p. 31]

Petitioner timely sought writs in the Third Circuit Court of Appeals. [rec. doc. 1-5, pp. 43-58]

On January 15, 2008 the Third Circuit denied relief noting, "There is no error on the part of the trial court in denying Relator's claim that he was denied the right to testify. Further, two additional claims by Relator, urging ineffective assistance of counsel, are without merit." *State of Louisiana v. Toby Shaun Bordelon*, No. KH 07-01179. [rec. doc. 1-5, p. 59; SCR, Vol. 2, p. 244]

His writ application [rec. doc. 1-5, pp. 60-76] was denied without comment by the Louisiana Supreme Court on December 12, 2008. *State of Louisiana ex rel. Toby Shaun Bordelon v. State of Louisiana*, 2008-KH-0704 (La. 12/12/2008). [rec. doc. 6; SCR, Vol. 2, p. 273]

Petitioner filed the instant petition for writ of *habeas corpus* on December 9, 2008; he presented claims identical to those argued in his application for post-conviction relief. [rec. docs. 1 and 1-3]

Meanwhile, on November 19, 2008, petitioner filed a second *pro se* application for post-conviction relief in the Thirteenth Judicial District Court alleging a single claim for relief, "Sheriff Department breached chain of custody by not maintaining first set of clothing obtained from victim, which would have established that no struggle occurred between petitioner and the alleged victim." [SCR, Vol. 2, pp. 246-262] On December 8, 2008 the District Court denied relief without a hearing noting, "Denied. Defendant has already had prior post-conviction relief application." [SCR, Vol. 2, p. 263]  Petitioner's writ application [SCR, Vol. 2, pp. 275-276] was denied by the Third Circuit on June 2, 2009 as follows:

> Relator fails to prove that the alleged mis-handling of evidence undermined confidence in the outcome of the trial or established that his trial resulted in a verdict which was not worthy of confidence. See *State v. Deruise*, 98-541 (La. 4/3/01), 802 So.2d 1224, *cert. denied*, 543 U.S. 926, 122 S.Ct. 283 (2001). Accordingly, this claim does not constitute an exception to La. Code Crim.P. arts. 930.4(E) and 930.8. Therefore, the trial court did not err in denying Relator's application for post-conviction relief. For these reasons, Relator's writ application is denied."

*State of Louisiana v. Toby Shaun Bordelon*, KH 09-00011 (La. App. 3 Cir.  6/2/2009). [SCR Vol. 2, p. 277]

On April 5, 2010 the Louisiana Supreme Court denied writs. *State of Louisiana ex rel. Toby Shaun Bordelon v. State of Louisiana*, 2009-KH-1449 (La. 4/5/2010). [rec. doc. 17-1, p. 91]

On June 4, 2010 petitioner filed an amended petition for writ of *habeas corpus* in this court. Petitioner re-urged the original claims and added a fourth claim for relief: "Petitioner was denied Due Process by State withholding information that Sheriff's Department breached chain of custody pertaining to particular evidence." [rec. doc. 17-1, p. 10]

### *Law and Analysis*

This petition was filed after the April 1996 effective date of the Anti-terrorism and Effective Death Penalty Act or AEDPA (Pub.L. No. 104-132, 100 Stat. 1214)  and therefore federal *habeas corpus* review is governed by the provisions of the Act including those  provisions codified at §2254(d)(1) and (2).

### *Claims One, Two, and Three and the AEDPA Standard for Review*

Since the ineffective assistance of counsel  claims raised in petitioner's original petition for *habeas corpus* were adjudicated on the merits this Court must utilize AEDPA's deferential standards for review codified at 28 U.S.C. § 2254(d)(1) and (2).  Under these provisions, *habeas* relief is not available  unless the state courts' adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

28 U.S.C. §§ 2254(d)(1) and (2).

Questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), while pure questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir.2000), *cert. denied*, 532 U.S. 1039, 121 S.Ct. 2001, 149 L.Ed.2d 1004 (2001). The state court's decision is contrary to federal law within the meaning of § 2254(d)(1) if the state court applies a rule contradicting the governing law set forth in the Supreme Court's cases, or the state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's factual findings constitute "an unreasonable application of clearly established" Supreme Court precedent if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. The inquiry into the issue of "unreasonableness" is objective. *Id.* at 409-10. A state court's <u>incorrect</u> application of clearly established Supreme Court precedent is not enough to warrant federal *habeas* relief – the application must also be <u>unreasonable</u>. *Id.* at 410-12 (emphasis supplied).

The state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1). In order to obtain *habeas* relief on the ground that the state court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the petitioner must rebut by clear and convincing evidence the presumption that the state court's factual findings are correct. See *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir.2000).

"[U]nder the deferential standard of AEDPA, [federal courts] review only the state court's decision, not its reasoning or written opinion, to determine whether it is contrary to or a

misapplication of clearly established federal law." *Catalan v. Cockrell*, 315 F .3d 491, 493 (5th Cir.2002), citing  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir.2002)(*en banc*).

Each of the three ineffective assistance of counsel claims has been analyzed under these standards.

### Claim One – Ineffective Assistance of Counsel – Right to Testify

In his first claim for relief petitioner contends that his court-appointed trial counsel provided ineffective assistance when he refused to permit petitioner to testify in his own defense at trial. Petitioner presented this argument to the Thirteenth Judicial District Court as Claim One in his first application for post-conviction relief. [rec. doc. 1-4, pp. 43-79; SCR Vol. 2, pp. 194-235]

At the hearing convened on August 9, 2007, petitioner claimed "I was denied my right to testify." [rec. doc. 1-4, p. 5] He alleged that on the occasion of his first meeting with trial counsel, counsel advised, "... you know you can't testify because you're a convicted felon..." [*Id.*[1]] Thereafter, during the course of the trial, at each break in the proceedings, petitioner advised counsel, "... I have to testify, I have to testify...", but his attorney said, "... no you can't...". [*Id.*, p. 6] Petitioner alleged that he asked his attorney to allow him to testify before the defense rested and before closing arguments and, that he even attempted to raise his hand in court but counsel "... physically grabbed my arm and pulled it down, looked at me and said I don't think the jury seen you." [*Id.*, p. 7] Finally, on direct examination he was asked, "Did you ever tell the court that you wanted to testify...?" and he replied, "No, not until the end..." [*Id.*, pp. 7-8] by which he meant, "... after closing arguments." [*Id.*, p. 9]

---

[1] Petitioner confirmed his status as a convicted felon, having been convicted of second degree battery, a felony under Louisiana law, on September 16, 2004. [rec. doc. 1-4, p. 6]

Petitioner's court-appointed trial counsel, Alex Chapman, also testified.  He refuted

petitioner's version of the events.  According to him,

> There were times during the trial when he said I'm going to take the stand, and I'd
> say well let's just wait and see how the evidence plays out, it might not be in your
> best interest, let's see how the victim testified, let's see how their case plays out. I
> found Toby to be a pretty volatile kind of guy that he'd get fired up and I'd say let's
> calm down, let's see how things play out and we'll talk about it, and usually I was
> able to talk him out of it. I thought that was in his best interest because of h is
> courtroom demeanor, because of his prior felony record and because I think we had
> pretty much shot a lot of holes in the state's case, you know, it's best, you can only
> hurt yourself when you get on the stand you might hurt yourself bad, so that was
> basically what went on during the whole trial scenario...
>
> Before we rested we did go in the jury room where he said he wanted to take the
> stand. I said okay, to protect myself I'm going to go ahead and try to encourage you
> don't do it, we've blown holes in their cases, we pretty much shown that she lied
> about how the incident occurred and there was a lot of inconsistencies of the
> investigation and if after everything was said and done, after our meeting in there,
> he's insistent on taking the stand I was going to come out here outside the presence
> of the jury and to protect myself announce to the court that despite my pleading with
> him not to testify, that it's against his best interest to do so that [if] he insist on doing
> it I would have had on the record something to protect myself, but it turned out not
> to be necessary because after being in there long enough I guess, I think he calmed
> down and said okay, I won't testify. [*Id.*, pp. 20-21]

Later, he reiterated, "... that last discussion we had before we rested it was going to be, I was

ready to let him testify and I was going to cover myself if that's what he wanted to do, but after it

was all said and done I think that he didn't, that he agreed to go with my advice not to testify." [Id.,

p. 24]

Based on the testimony of petitioner and his attorney, the court concluded, "It is obvious to

me that Mr. Bordelon did at different times want to testify to relate his side of the story but after

calm, cool, collective conversation he got good advice from his attorney. It's not that Mr. Chapman

told him he could not testify, he was telling him he should not testify. There is a significant difference there. I don't find that Mr. Bordelon's argument holds water, I'm denying the post conviction relief that he prayed for." [*Id.*, p. 31]

With regard to petitioner's first claim, the trier of fact accepted counsel's version of the events in question and rejected petitioner's contrary version of those same events.  The court concluded that counsel did not prohibit his client from testifying; he merely discouraged his client from testifying. This was a finding of fact. A  federal *habeas* court must defer to the state court's factual findings unless the petitioner rebuts those findings with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  Petitioner did not even attempt to rebut those factual findings. Based upon a review of the transcript, the undersigned must conclude that the State judge's finding of fact was not unreasonable under the circumstances.

Moreover, in order to prevail on an ineffective assistance of counsel claim, a *habeas* petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

An attorney's  performance is deficient if it "falls below an objective standard of reasonableness" as measured by professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. The *habeas* court must determine "... whether there is a gap between what counsel actually did and what a reasonable attorney would have done under the circumstances." *Neal v. Puckett*, 286 F.3d at 236.  In so doing, the Court must "eliminate the distorting effects of hindsight," *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, and may not assume deficient performance based upon disagreement with strategic choices. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir.1999).

Here, the trier of fact also recognized that counsel's efforts to keep petitioner off the witness stand were valid strategic choices. As noted by the Court, "Basic criminal defense law 101 says tells [sic]  you if you've got a defendant who has a previous felony record you try to keep them off the stand at all costs. Secondly, if you've got a defendant who you're representing who is volatile you try to keep them off of the stand at all costs." [rec. doc. 1-4, p. 31] In this instance, the state court applied the appropriate legal standard for ineffective assistance of counsel claims. The court's conclusion that counsel's strategic choice was appropriate under the circumstances has not been shown to be an unreasonable application of the law and therefore, petitioner cannot prevail on this his first claim for *habeas corpus* relief.

### *Claim Two – Ineffective Assistance of Counsel – Failure to Investigate*

Petitioner next contends that counsel was ineffective because he "... failed to investigate the facts, meaningfully prepare a defense, or ... make timely objections during trial..." This claim was also raised as petitioner's second ground for relief in his first application for post-conviction relief. [rec. doc. 1-4, pp. 43-79; SCR, Vol. 2, pp. 194-235]

At the hearing convened on August 9, 2007, court-appointed post-conviction counsel announced his readiness to proceed and stated, "Yes sir, in a nutshell Your Honor, Mr. Bordelon's number one complaint is that he was not afforded his right to testify in his own defense in the trial in this matter. In addition, he has some following allegations that basically ride onto that in ineffective assistance of counsel based on the fact that he wasn't given the opportunity to testify and then there was a third complaint of some jury voir dire improperness, but I think he said that's not a big issue for this morning." [rec. doc. 1-4, p. 2]

Indeed, the testimony elicited from petitioner at the beginning of the hearing focused entirely

on the first claim. [rec. doc. 1-4, pp. 1-9] At some point, counsel asked petitioner, "We know about the one that you  didn't get a right to testify in your own behalf, tell me what other rights you feel you were denied in this trial?"  Petitioner replied, "I was denied my right to testify...; I was denied my compulsory process and my due process ... [b]ecause I wasn't given an opportunity to testify on my own behalf when I, I mean, I unequivocally made known my desire to Mr. Chapman to testify and he just flat out denied me saying no, you can't testify because you're a convicted felon." [rec. doc. 1-4, p. 9]

    Counsel then attempted to have petitioner expand on his other claims and asked, "Besides those, is there any other complaint that you have with Mr. Chapman?" Petitioner responded, "He didn't do his job as the constitution promises." Counsel again asked him to be specific and asked, "Is there something else that he did or didn't do that you're complaining about?" and petitioner responded, "Yeah, he failed to call me as a witness on my own behalf..." Finally, counsel asked, "... besides him not calling you as a witness and testifying is there something else that he did or didn't do that you're complaining about this morning?" To which petitioner replied, "Yeah, the jury bias..." Thereafter, petitioner complained that counsel allowed two biased jurors to remain on the jury, and, following that brief interlude counsel inquired, "<u>Alright, so now we've got two things, we have the you didn't testify, we have the jury problem, is there any other thing that you have a complaint about Mr. Chapman this morning?" To which petitioner responded, "No sir.</u>" [rec. doc. 1-4, pp. 10-11] Petitioner then read a passage from his brief concerning the testimony claim and at its conclusion was asked, "Is that everything Mr. Bordelon?" To which he replied, "Yes sir." [rec. doc. 1-4, pp. 12-13]

    In other words, petitioner, when given the opportunity, provided no evidence whatsoever in

10

support of his second claim for relief.  Additionally, his application for post-conviction relief and his *habeas corpus* petition present only vague and conclusory allegations in support of this second claim.  Indeed, the memorandum filed in support of the instant litigation alleges that his trial attorney "... failed to prepare any defense prior to trial, failed to investigate the facts of the case, failed to interview witnesses, failed to confer with his client in any meaningful way, failed to make timely objections and stood idly by during closing arguments as the prosecutor made improper, influential comments during the close of trial." [rec. doc. 1-2, pp. 15-16]

A *habeas* petitioner  "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir.1989). To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable. See *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir.1985); see also *United States v. Irby*, 103 F.3d 126 (5th Cir.1996) (unpublished) (denying ineffective assistance  claim based on counsel's failure "to adequately cross-examine a number of government witnesses" because petitioner "fail[ed] to set forth ... the possible impact of any additional cross-examination");  *Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir.1992) (denying *habeas* relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence).

Here, petitioner has provided only one concrete example of what he claims was counsel's deficient performance, and that is his attorney's failure to object to a statement made by the

prosecutor in closing argument.  Petitioner does not show that the complained of statement was in fact objectionable, or that it warranted a mistrial. Indeed, the statement concerned  the issue of penetration and whether that aspect of the victim's complaint had been thoroughly investigated. However, even if counsel's failure to object to the statement was deficient performance, petitioner cannot show prejudice since it is apparent from the fact that the jury found petitioner guilty of attempted rape that they concluded that the evidence of penetration was insufficient to warrant a verdict of guilty as charged.

The state courts dismissed this claim as having no merit. Petitioner has not shown that this finding and conclusion was unreasonable.

### *Claim Three – Ineffective Assistance of Counsel – Juror*

Petitioner's third claim was also raised in his first application for post-conviction relief. Petitioner complained about two jurors who he claims "... should have been stricken as veniremen for cause due to their personal relationship with the alleged victim, her family, or both..."  Petitioner gave short shrift to this complaint at the evidentiary hearing on August 9, 2007. Following his lengthy testimony concerning the alleged denial of his right to testify, petitioner stated,

> Yeah, the jury bias. There was, ... I can't recall the guy's name because I don't have the transcript on the jury selection, but there was one guy in particular that sat up there and said that he's been working with Mrs. George's father for the past ten years but yet he claims he didn't even know him, I mean you work in a building for ten years with a man in a 50 x 50 building and he's gonna sit up there and, I didn't want him on the jury but Mr. Chapman of course, you know, I mean.

> ... And there was this other one, Mr. Jerry O'Neal, both families, my family, he knew my family and the other guy's family and I don't think he should have been there either. [rec. doc. 1-4, pp. 10-11]

When asked if petitioner raised those objections to his attorney, he replied, "Yes I did but not so

much Mr. Jerry but that other guy that's been working with Mrs. George's family for the past ten years. Yeah, I did raise that issue, I told him I didn't think he'd make a fair ruling and he says oh, I think he's gonna be okay." Counsel then asked if he and petitioner discussed challenging the prospective juror and he replied, "No, no discussion." [*Id.*, p. 11]

Unfortunately, petitioner was unable to identify the juror who worked with Mr. George when called upon to do so at the evidentiary hearing.  Neither could petitioner identify this juror in his affidavit in support of post-conviction relief, nor in his application,  nor his *habeas* petition in this court. [SCR Vol. 2, pp. 207 (affidavit); 229-230 (application for post-conviction relief)]

The transcript of *voir dire* was not provided by the respondent; however, at the evidentiary hearing convened on August 9, 2007, petitioner's trial attorney testified as follows concerning this witness:

> I kind of remember that there was a juror that had some work relationship with Mr. George and he did raise a concern about that and I don't know if we were out of peremptory, I'm pretty sure that I did make a challenge for cause and the record will bear out but Mr. Lejeune (prosecutor) rehabilitated him and the court did not grant the challenge for cause. I don't know if we were out of peremptory or if I just made a judgment call and I didn't think that that was going to, you know, I didn't know who was left to come up, I kind of don't remember what our trial strategy was if we wanted all men on the jury, if we wanted all women on the jury, but we ended up keeping him. [rec. doc. 1-4, p. 23]

The record indicates that counsel did not challenge any of the prospective jurors for cause. Indeed, according to petitioner, when questioned during *voir dire*, the unknown juror denied knowing the victim's father and therefore, any challenge for cause would surely have been denied. The  record does establish that counsel used all twelve of his allotted peremptory challenges. [SCR, Vol. 1 p. 74] It appears then that counsel could not challenge this juror for cause and  did not use a

peremptory challenge either because he had no more peremptory challenges to use, or, he made a strategic decision to keep the prospective juror on the jury.

Under *Strickland*, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). A "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Richards v. Quarterman*, 566 F.3d 553,  564 (5th Cir. 2009) (internal quotations and citations omitted). Generally, an "attorney's actions during *voir dire* are considered to be a matter of trial strategy." *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir.1995).

Finally, petitioner has alleged that two of the jurors were biased, however, he has offered no proof of that fact and relies again upon conclusory allegations.  Juror bias is present when the juror's "... views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."  *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir.), cert. denied, 530 U.S. 1286, 121 S.Ct. 2, 147 L.Ed.2d 1027 (2000) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)). Bias may be either actual or implied.

To demonstrate actual bias, "admission or factual proof" of bias must be presented. *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir.2001), *cert. denied*, 535 U.S. 1016, 122 S.Ct. 1605, 152 L.Ed.2d 620 (2002).  Concerning actual bias, petitioner offers no evidence suggesting that either juror's answers on *voir dire* were false or misleading.

Nor has petitioner presented the type of evidence upon which bias may be presumed. *See Solis v. Cockrell*, 342 F.3d 392, 396-99 (5th Cir.2003), cert. denied, 540 U.S. 1151, 124 S.Ct. 1149,

157 L.Ed.2d 1045 (2004) (discussing limited scenarios in which implied bias might exist and, citing *Andrews v. Collins*, 21 F.3d 612 , 620 (5th Cir. 2003) and  noting the "carefully watched limits" of the doctrine and rejecting the contention that a juror's attenuated familial connection to the victim warranted a presumption of bias).

This claim was basically ignored by the trial court, but the Court of Appeal determined that it lacked merit.  Petitioner has not shown this finding and conclusion to be unreasonable.

### *Claim Four – Chain of Custody*

After service of process was ordered and after the respondent filed an answer, petitioner moved the court to amend his petition by adding a fourth claim for relief. [see rec. doc. 17] In this amended petition he argued that he "... was denied Due Process by [the] State withholding information that [the] Sheriff's Department breached [the] chain of custody pertaining to particular evidence." [rec. doc. 17-1, p. 40] In support of this claim petitioner alleged that the Evangeline Parish Sheriff's Office misplaced the shirt worn by the victim on the day of the alleged sexual assault. According to petitioner, "The shirt involved was attested to as having been torn by Petitioner during the attack. Yet, now the shirt has been found, physical inspection of it reveals it has not been torn." [*Id.*]

Petitioner raised this claim in a second application for post-conviction relief filed in the Thirteenth Judicial District Court on November 19, 2008. [SCR, Vol. 2, pp. 246-272] The form pleading provided to and submitted by petitioner contained the following notice –  "The above claims may not provide grounds for relief if any of the following applies to you: ... (5) A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application." Petitioner was further instructed, "This application will provide space for you

to explain the reasons why you ... failed to include the claim in a prior application." [*Id.*, p. 253]

In the blank supplied for petitioner to explain why he failed to include the claim in his prior application, petitioner wrote "N/A". [*Id.*, p. 254]

Petitioner's second application was denied without a hearing on December 8, 2008. The trial judge, in denying relief noted, "Defendant has already had prior post conviction relief application." [*Id.*, p. 263] Petitioner sought review in the Third Circuit Court of Appeals [*Id.*, pp. 275-276] On June 2, 2009 the Third Circuit denied writs noting,

> Relator fails to prove that the alleged mis-handling of evidence undermined confidence in the outcome of the trial or established that his trial resulted in a verdict which was not worthy of confidence. See *State v. Deruise*, 98-541 (La. 4/3/01), 802 So.2d 1224, *cert. denied*, 543 U.S. 926, 122 S.Ct. 283 (2001). Accordingly, this claim does not constitute an exception to La. Code Crim.P. arts. 930.4(E) and 930.8.[2] Therefore, the trial court did not err in denying Relator's application for post-conviction relief. For these reasons, Relator's writ application is denied."

*State of Louisiana v. Toby Shaun Bordelon*, KH 09-00011 (La. App. 3 Cir.  6/2/2009). [Id.,  p. 277]

While not explicitly stated by the trial court, it is clear that this second application for post-conviction relief was denied and dismissed by the trial court pursuant to La. C.Cr.P. art. 930.4(E) which provides for the dismissal of successive applications that raise "... a new or different claim that was inexcusably omitted from a prior application."   Art. 930.4(F) provides, "If the court considers dismissing an application for ... failure to include the claim in a prior application, the court shall order the petitioner to state reasons for his failure." Under Louisiana law, since the form

---

[2] Art. 930.8 provides a 2-year limitations period for post-conviction relief, generally reckoned from the date that the judgment in question became final under either art. 914 or art. 922. Since petitioner timely appealed his conviction, limitations should be reckoned from the date described in art. 922(D), which is the date the Louisiana Supreme Court denied writs on direct review – December 15, 2006. *See State of Louisiana v. Toby Shaun Bordelon*, 2006-1549 (La. 12/15/2006), 944 So.2d 1284. Pursuant to La. C.Cr.P. art. 930.8(A) petitioner had until December 15, 2008 to file a timely application for post-conviction relief. It thus appears that his second application, filed in November 2008, was timely.

provided for prisoners seeking post-conviction relief requires the inmate to explain why he failed to raise the ground in a prior application, district courts may assume that proper use of the post-conviction application form satisfies the requirements of art. 930.4(F) without the need for further filings, formal proceedings, or a hearing. See *State of Louisiana ex rel. Rice v. State of Louisiana*, 1999-0496 (La. 11/12/1999), 749 So.2d 650.

Clearly, petitioner's second application was successive.  Petitioner was afforded the opportunity to  explain why his failure to raise the evidence claim in his first application should be excused, however, he chose not to provide an explanation and therefore the trial court's dismissal of his second application as successive  was appropriate and in keeping with Louisiana law.

It should be noted that petitioner filed his first application for post-conviction relief in March 2007; the newspaper article he relied upon as the basis for his claim was published on July 3, 2005 [SCR, Vol. 2, p. 272], some months before he was sentenced, yet he did not explain why his failure to include the evidentiary claim in either his direct appeal or  the first application for post-conviction relief should be excused.

In his writ application filed in the Third Circuit in January 2009, petitioner again did not explain why he failed to include the evidentiary claim in his direct appeal or  first application for post-conviction relief, other than to say that the facts supporting this claim were not known prior to trial. [rec. doc. 17-1, pp. 71-79] While that may be true, it does not explain why the facts – which were published months before his appeal and almost two years in advance of petitioner's first application for post-conviction relief – were not known to petitioner on the date that the new article was published.

In any event, it appears that the State courts did not reach the merits of petitioner's

evidentiary claim and instead relied upon the procedural default codified at La. C.Cr.P. art. 930.4(E) to dismiss the claim.

### *Procedural Default*

The procedural default doctrine bars federal *habeas* corpus review when a state court declines to address a petitioner's federal claims because the petitioner has failed to follow a state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991). "[I]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal *habeas* review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750-51. This doctrine ensures that federal courts give proper respect to state procedural rules. *Id.*

Furthermore, the doctrine presumes that a state court's express reliance on a procedural bar functions as an independent and adequate ground in support of the judgment. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir.1996). However, a petitioner can rebut this presumption by establishing that the procedural rule is not strictly or regularly followed. *Moore v. Roberts*, 83 F.3d 699 (5th Cir.1996). The burden is on the petitioner to show that a state did not strictly and regularly follow the procedural bar at the time pertinent to his state court action. *Stokes v. Anderson*, 123 F.3d 840, 843 (5th Cir.1999); *Amos v. Scott*, 61 F.3d 333, 342, (5th Cir.1995); *Sones*, 61 F.3d at 416. In bearing the burden, the petitioner must demonstrate that the state failed to apply the procedural bar to claims which are identical or similar to the claims raised by him. *Stokes*, 123 F.3d at 860; *Amos*, 61 F.3d at 340.

18

Louisiana courts regularly follow the ban on successive post-conviction applications. See for example, *State of Louisiana ex. rel. Maurice O. Brown v. State of Louisiana*, 2004-1871 (La. 5/6/2005), 901 So.2d 1090; *State of Louisiana ex rel. James Pendelton v. State of Louisiana*, 2004-1523 (La. 4/22/2005), 899 So.2d 562; *State of Louisiana ex rel. Kenneth W. Rice v. State of Louisiana*, 1999-0496 (La. 11/12/1999), 749 So.2d 650; and,  *Carlin v. Cain*, 1997-2390 (La. 3/13/1998), 706 So.2d 968 (Procedural bar of art. 930.4(E) must be raised initially by the District Court; Courts of Appeal may not raise the bar *sua sponte*.).

As noted above, the District Court implicitly invoked the procedural bar; the Third Circuit was explicit, citing the article as grounds for dismissal.  Since the Third Circuit's opinion  was the last reasoned opinion of the state courts addressing petitioner's fourth claim, and, since  that court specifically identified and invoked the bar on successive post-conviction applications, the Louisiana Supreme Court's subsequent one-word writ denial is resumed to have been based upon the same procedural default identified by the Court of Appeals. See *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (Where there has been a reasoned state court judgment which explicitly rejects the federal claim on state procedural grounds, subsequent unexplained judgments upholding the previous judgment or rejecting the claim are presumed to rely upon the same ground.)

Since it is apparent that the courts of Louisiana regularly invoke the procedural default codified at La. C.Cr.P. art. 930.4(E), and since that provision was implicitly invoked by the trial court and explicitly invoked by the Court of Appeals,  federal *habeas corpus* review of this claim is prohibited by the procedural default doctrine.

### *Cause and Prejudice or Miscarriage of Justice*

Federal *habeas* review of the procedurally defaulted evidentiary claim is barred "...unless the prisoner can demonstrate cause for the default and actual prejudice as a  result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

### *Cause*

In *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Supreme Court explained that "cause" in the context of a procedural default refers to an impediment <u>external</u> to the defense: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard." *Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645 (internal citations omitted).

### *Ignorance of the Law*

Petitioner has not shown any external factor that resulted in his failure to raise his evidentiary claim in his first application for post-conviction relief.  While he may argue that his ignorance of the law caused him to default his federal claim, such allegations are insufficient to establish cause excusing a *habeas* petitioner's default. Compare *United States v. Liedtke*, 107 Fed. Appx. 416 (5th Cir.2004) (unpublished); see also *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir.1992).

Clearly, the cause of the default was petitioner's failure to include this claim in his first application for post-conviction relief. This failure was clearly not "... an impediment <u>external</u> to the defense..." Thus, petitioner cannot show "cause" for his default.  If a *habeas* petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir.1992).

### *Prejudice*

Nevertheless, a discussion of prejudice in this context is appropriate. According to the jurisprudence, "[i]n addition to cause, [a procedurally defaulted *habeas* petitioner] must show actual prejudice to overcome the procedural bar." *United States v. Guerra*, 94 F.3d 989, 994 (5th Cir.1996) (internal quotations omitted). "The movant makes this showing where he demonstrates that, <u>but for</u> the error, he might not have been convicted." *Id.* (emphasis supplied); see also *Pickney v. Cain*, 337 F.3d 542, 545 (5th Cir.2003). Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different. *Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir.2000).

Here, petitioner cannot show prejudice. His underlying procedurally defaulted claim is patently without merit. He claims that the lost item of evidence would have served to refute the testimony of the victim concerning her contention that her shirt was torn in the affray; however, an untorn shirt was introduced as evidence and the parties stipulated that the shirt which was believed to be the shirt worn by the victim at the time of the alleged crime was not torn. [SCR, Vol.  3, pp. 387-388][3]

---

[3] In accordance with the stipulation, the Court instructed the jury, "... the Crime Lab did not detect a tear on Miss George's shirt so you are to treat that as evidence." [SCR, Vol. 3, p. 388]

### *Miscarriage of Justice*

Since petitioner has thus far failed to show "cause and prejudice" for his default, federal review of the defaulted claims may therefore be had only if necessary to avoid a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *Glover v. Cain*, 128 F.3d 900, 904 (5th Cir. 1997). To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime. *Corwin v. Johnson*, 150 F.3d 467, 473 (5 Cir.1998); *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995). Thus, the petitioner must make a "colorable showing of factual innocence." *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.), *cert. denied*, 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996) quoting *McClesky v. Zant*, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993).

Petitioner implies, but he has not shown that as a factual matter that he is actually innocent of the crime of attempted forcible rape.  Indeed, the Third Circuit Court of Appeal provided an exhaustive evaluation of the facts adduced at trial when it determined that the evidence was sufficient to support petitioner's conviction. See *State of Louisiana v. Toby Shaun Bordelon*, 2005-1507 (La. App. 3 Cir. 4/19/2006), 929 So.2d 244, 249-252.  Thus far, petitioner has not shown that he will suffer a fundamental miscarriage of justice from this court's failure to consider Claim Four.  Accordingly, petitioner cannot avoid procedural default of his claims on the grounds of actual

22

innocence.[4]

### *Merits of Claim Four*

Even if Claim Four was not procedurally defaulted, it would still be subject to dismissal. Since the Louisiana courts failed to adjudicate Claim Four on the merits, the deferential standards of the AEDPA would be inapplicable. Nevertheless, even if the Court were to consider a *de novo* review of this claim, dismissal would be appropriate.

As noted above, petitioner claims that the loss of the shirt worn by the victim prohibited him from impeaching her testimony. However, as shown above, the parties ultimately stipulated to the fact that the victim's shirt was untorn. [SCR, Vol. 3, pp. 387-388] In order to obtain habeas corpus relief pursuant to 28 U.S.C. §2254, petitioner must demonstrate "... that he is in custody in violation of the Constitution or laws, or treaties of the United States."  Claim Four alleges a Constitutional violation, however, the allegation is purely conclusory and unsupported by the record.

### *Conclusion and Recommendation*

The Louisiana courts adjudicated the merits of petitioner's ineffective assistance of counsel claims and determined that the claims were without merit. Petitioner has not shown that the Louisiana courts' resolution of Claims One, Two, and Three was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.   Further, it appears that the Louisiana courts refused to address the merits of Claim Four because the claim was raised in a

---

[4] Of course, petitioner may object to this Report and Recommendation. In the event that he does object, he is encouraged to provide argument and evidence of "cause and prejudice" and "miscarriage of justice."

successive application for post-conviction relief and therefore procedurally defaulted. Since petitioner has demonstrated neither cause, prejudice, nor actual innocence, dismissal of Claim Four pursuant to the procedural default doctrine is appropriate. In addition, the Claim is manifestly without merit and subject to dismissal on that basis as well.

Accordingly,

**IT IS RECOMMENDED** that the petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from**

service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  See 28 U.S.C. §2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

In Chambers, Lafayette,  Louisiana, August 4, 2010.


Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)